FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ SEP 1 2020 ★

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

BROOKLYN OFFICE

-------------------------------------------------------------- X
                                                                :
**LILLIAN PIZZARELLI,**                                         :
                                                                :
                                Plaintiff,                      :
                                                                :       **MEMORANDUM**
                                                                :       **DECISION AND ORDER**
                - against -                                      :
                                                                :       16-CV-1868 (AMD)
**COMMISSIONER OF SOCIAL SECURITY,**                            :
                                                                :
                                Defendant.                      :
                                                                :
-------------------------------------------------------------- X

**ANN M. DONNELLY,** United States District Judge:

The *pro se* plaintiff challenges the Social Security Commissioner's decision that she was

not disabled for the purposes of receiving Social Security Disability Insurance ("SSDI") under

Title II of the Social Security Act.  On July 13, 2018, the defendant moved for judgment on the

pleadings.[1]  (ECF No. 14.)  For the reasons explained below, I deny the defendant's motion and

remand the case for further proceedings.

## BACKGROUND

On May 3, 2013, the plaintiff applied for SSDI alleging that her disabilities—including

facet arthropathy, post-traumatic stress disorder ("PTSD"), fibromyalgia, arthritis, rheumatoid

arthritis, central canal stenosis, multilevel degenerative disc disease, insomnia and sleep apnea,

ulnar and radial branch nerve damage and neck and back injuries—began on June 1, 2008.  (Tr.

138-41, 152.)  The plaintiff's application was denied.  (Tr. 78-87, 91-94).  On July 24, 2013, the

---

[1] The plaintiff began this action on April 11, 2016.  (ECF No. 1.)  On November 17, 2017, the defendant
notified the plaintiff of its intention to file a motion for judgment on the pleadings and requested a written
response by January 16, 2018.  (ECF No. 12.)  The Court extended the time for the plaintiff to file a
response to July 9, 2018, but the plaintiff did not respond.  The defendant filed its motion for judgment on
the pleadings on July 13, 2018.  (ECF No. 14.)

plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. 99-100.)  ALJ

April M. Wexler conducted a hearing on September 4, 2017, at which the plaintiff, represented

by counsel, testified, as did vocational expert Esperanza DiStefano.[2]  (Tr. 32-77.)

In a September 17, 2014 decision, the ALJ found that although the plaintiff had severe

impairments, she retained the residual functional capacity ("RFC") to perform light work and

was thus not disabled.  (Tr. 10-31.)  The Appeals Council denied the plaintiff's request for

review on February 10, 2016, and the ALJ's decision became the final decision of the

Commissioner.

## DISCUSSION

A district court reviewing the Commissioner's final decision is limited to determining

"whether the SSA's conclusions were supported by substantial evidence in the record and were

based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012)

(quoting *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009)).  The district court

must uphold the Commissioner's factual findings if there is substantial evidence in the record to

support them.  42 U.S.C. § 405(g).  "Substantial evidence is 'more than a mere scintilla' and

'means such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'"  *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Richardson v. Perales*,

402 U.S. 389, 401 (1971)).  "To determine on appeal whether the ALJ's findings are supported

by substantial evidence, a reviewing court considers the whole record, examining evidence from

both sides, because an analysis of the substantiality of the evidence must also include that which

detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

---

[2] During this hearing, the plaintiff amended her disability onset date to January 8, 2010.  (Tr. 36.)

2

"Although factual findings by the Commissioner are 'binding' when 'supported by substantial evidence,'" the court will not defer to the ALJ's determination "[w]here an error of law has been made that might have affected the disposition of the case." *Pollard v. Halter*, 377 F.3d 183, 188–89 (2d Cir. 2004) (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)) (internal citations omitted). Thus, "[e]ven if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (quoting *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).

### I.    ALJ's Evaluation of the Medical Evidence

An ALJ should give a treating physician's opinion controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). "[I]f the ALJ decides the opinion is not entitled to controlling weight, it must determine how much weight, if any, to give it." *Estrella v. Berryhill*, No. 17-3247, 2019 WL 2273574, at *2 (2d Cir. May 29, 2019). When the ALJ does not give a treating physician's opinion controlling weight, she must "comprehensively set forth [her] reasons for the weight assigned to a treating physician's opinion." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (internal citations omitted). Moreover, "the ALJ must explicitly consider, *inter alia*, (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013); 20 C.F.R. § 416.927(c)(1)–(6). If the ALJ does not "explicitly" consider these factors the case must be remanded unless "a searching review of the record" makes it clear that the ALJ applied "the

3

substance of the treating physician rule." *Estrella*, 2019 WL 2273574 at *2 (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)).

In evaluating the plaintiff's complex medical history, ALJ Wexler gave "great weight" to the opinions of Dr. Jerome Caiati, a consultative orthopedic examiner, and Dr. Paul Herman, a consultative psychologist, and "good weight" to the opinion of H. Rozelman, Ph.D., a state agency psychologist consultant. (Tr. 21-23.) Doctors Caiati and Herman examined the plaintiff only once: Dr. Caiati did an orthopedic examination on June 25, 2013 (Tr. 311-14), and Dr. Herman did a psychiatric evaluation on June 25, 2013 (Tr. 278-283). Dr. Rozelman did not examine the plaintiff, but made her determination based on a review of the plaintiff's medical records. (Tr. 316-23.) While each doctor appears to have performed a thorough examination, "a snapshot assessment of the claimant's functioning at a particular time . . . is not indicative of functioning at other times," as the ALJ observed. (Tr. 23.) *See also Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990) ("[A] consulting physician's opinions or report should be given limited weight . . . because 'consultative exams are often brief, are generally performed without benefit or review of claimant's medical history and, at best, only give a glimpse of the claimant on a single day.'") (citation omitted).

By contrast, ALJ Wexler gave "less weight" to three of the plaintiff's treating physicians: Dr. Judith Rosenblum, Dr. Nancy Weiner-Tice and Dr. Louis Tiger. (Tr. 21-23.) Dr. Rosenblum, a psychologist, began seeing the plaintiff on a regular basis in November of 2013. (Tr. 19.) After 14 sessions, Dr. Rosenblum provided a treating source statement on August 31, 2014, in which she reported that the plaintiff had been diagnosed with PTSD, obsessive-compulsive disorder and major depressive disorder, and that these conditions, coupled with severe chronic medical conditions, caused severe pain and greatly limited the plaintiff's "ability

4

to function." (Tr. at 394.) According to Dr. Rosenblum, the plaintiff's "emotional symptoms alone do not necessarily interfere with her working, but her chronic medical conditions together with her emotional symptoms, would cause a large amount of difficulty for her to work under stress." (*Id.*) ALJ Wexler gave Dr. Rosenblum's opinion less weight because the doctor did not include specific functional limitations, and because her opinion was "inconsistent with the opinion of Dr. Herman," who, as noted above, evaluated the plaintiff only once. (Tr. 23.) Nor did the ALJ consider the frequency, length or nature of Dr. Rosenblum's treatment, as she was required to do. There was, moreover, a gap in the record. As the ALJ observed, Dr. Rosenblum did not include specific functional limitations in her report, additional information that the ALJ had a duty to seek. *See McLaughlin v. Astrue*, No. 10-CV-0506, 2012 WL 2449938, at *6 (E.D.N.Y. June 27, 2012). On remand, the ALJ should seek Dr. Rosenblum's opinion on the plaintiff's specific functional limitations, determine the appropriate weight to give Dr. Rosenblum's opinion, and explain the reasons for her decision.

Dr. Rosenblum referred the plaintiff to Dr. Weiner-Tice for a psychiatric consultation in January of 2014. (Tr. 394.) Dr. Weiner-Tice treated the plaintiff from January through August of 2014. (Tr. 362, 395.) While, as the ALJ noted, this treatment started after the date of last insured, Dr. Weiner-Tice saw the plaintiff, at Dr. Rosenblum's recommendation, to treat the plaintiff for symptoms that existed before the date of last insured. Dr. Weiner-Tice's conclusion is consistent with that of Dr. Rosenblum: the plaintiff struggled with "anxiety, mood issues and physical limitations" (Tr. 395), and was "unable to attend to work tasks due to her mental challenges." (Tr. 365.) Dr. Weiner-Tice also diagnosed the plaintiff with Bipolar II disorder, which the ALJ did not consider. (Tr. 371.) ALJ Wexler accorded Dr. Weiner-Tice's opinion

5

"less weight," finding that her opinion was internally inconsistent, despite documented evidence of the plaintiff's mental challenges. (Tr. 23.)

The ALJ also gave less weight to the opinion of Dr. Tiger, a rheumatologist who treated the plaintiff three times between December of 2011 and September of 2012, because his opinion that the plaintiff was unable to work was "inconsistent with treatment notes documenting a normal, steady gait, and full motor power in all extremities." (Tr. 21, 318-22.)  In his initial treatment report, Dr. Tiger noted that the plaintiff's pain was recently "exacerbated" and that she had "multiple tender trigger points on her arms, legs, neck, upper and lower back and mild crepitation of the knees." (Tr. 319-20.)  Dr. Tiger continued to treat the plaintiff for rheumatoid arthritis and fibromyalgia, and noted in January of 2012 that she was "unable to work." (Tr. 321.)  Because the ALJ has the "final responsibility" for determining a claimant's ability to work, ALJ Wexler was not obligated to accord any weight to Dr. Tiger's conclusion that the plaintiff could not work. *See Williams v. Astrue,* No. 09-CV-3997, 2010 WL 5126208, at *12 (E.D.N.Y. Dec. 9, 2010) ("[F]inal responsibility for determining these matters is reserved to the Commissioner, not to physicians; therefore, the source of an opinion on those matters is not given 'special significance' under the regulations.") (citing *Francois v. Astrue*, No. 09-CV-6625, 2010 WL 2506720, at *6 (S.D.N.Y. June 21, 2010)); *see also* 20 C.F.R. § 416.927(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.").  Nevertheless, Dr. Tiger's observations about the plaintiff's pain and tenderness are relevant to determining whether the plaintiff could work.  If, upon further review, the ALJ determines that additional information would assist her in evaluating Dr. Tiger's opinion, she should request a medical source statement from him.

6

Because the treating doctors' opinions were supported by evidence in the record, the ALJ's decision to afford them less weight is not supported by substantial evidence. *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (treating physician rule requires that a treating physician's opinion be given "controlling weight" if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record) (internal citations omitted); *Halloran*, 362 F.3d at 33.

Remand is also necessary because the ALJ did not specify the weight that she gave the opinions of a group of the plaintiff's treating doctors—Dr. Donna Prill, Dr. Mark Levitt, Dr. Jasjit Singh or the physicians at North American Partners in Pain. The team of physicians at North American Partners in Pain, including Dr. Reginald Rosseau and Dr. Grace Forde, treated the plaintiff from May of 2013 through August of 2014. (Tr. 351-61, 398.) Dr. Forde assessed the plaintiff as "positive for tenderness in the paravertebral muscles of the lumbar spine" and "decreased range of motion." (Tr. 351.) Dr. Forde also diagnosed a positive straight leg test. (Tr. 20, 351.) This finding is inconsistent with the ALJ's conclusion that "the record does not demonstrate that the claimant's impairments are accompanied by . . . a positive straight leg raising test." (Tr. 17.)

Over the course of the plaintiff's treatment, doctors at North American Partners in Pain also diagnosed her with muscle spasms, cervical radiculopathy, lumbar radiculopathy (Tr. 354) and chronic pain syndrome (Tr. 353), conditions that the ALJ did not consider.

Dr. Prill at Twin Forks Family Practice treated the plaintiff from January of 2010 through June of 2013. During the plaintiff's initial visit, Dr. Prill diagnosed her with depression and anxiety for which she prescribed medication. (Tr. 286.) This diagnosis persisted through multiple follow-up visits, as Dr. Prill changed the plaintiff's medication dosage. (Tr. 287-95.)

7

While ALJ Wexler referred to Dr. Prill's notation of the plaintiff's "depressed mood" and physical pain in the extremities, she did not assign a weight to Dr. Prill's opinion. (Tr. 20-21.)

Nor did the ALJ specify the weight she gave to the opinion of Dr. Mark Levitt, an internist who treated the plaintiff from September of 1994 through April of 2013. (Tr. 21, 252-71.) Over the course of nearly a decade, Dr. Levitt treated the plaintiff for anxiety and depression, as well as pain, including pain related to arthritis.[3] (*Id.*)

The ALJ likewise did not assign a weight to the opinion of Dr. Singh, a neurologist who examined the plaintiff on multiple occasions, and concluded that the plaintiff suffered from cervical radiculitis and lumbosacral radiculitis. (Tr. 391.) On remand, the ALJ should consider the opinions of the treating physicians at North American Partners in Pain and Twin Forks Family Practice as well as Dr. Singh and Dr. Levitt—all of whom examined the plaintiff and made medical findings—and specify the weight their opinions deserve. *See Halloran*, 362 F.3d at 33.

## II.    Credibility Determination

On remand, the ALJ should also include her evaluation of the plaintiff's credibility. If a plaintiff's allegations are not supported by "objective medical evidence, the ALJ must engage in a credibility inquiry." *Gallagher v. Colvin*, 243 F. Supp. 3d 299, 306 (E.D.N.Y. 2017) (citation and quotations omitted). "Credibility determinations must include specific reasons for the finding on credibility[.]" *Woodcock v. Comm'r of Soc. Sec.*, 287 F. Supp. 3d 175, 176 (E.D.N.Y. 2017) (citations and alterations omitted). The ALJ must consider (1) the claimant's daily activities, (2) the duration, location, frequency and intensity of the claimant's pain, (3) precipitating and aggravating factors, (4) the type, dosage, effectiveness, and side effects of any

---

[3] Dr. Levitt's treatment records are handwritten and very difficult to read. The ALJ should obtain oral testimony, a legible (preferably typed) opinion or a medical source statement from Dr. Levitt if necessary.

medications that the claimant takes, (5) any treatment, other than medication, that the claimant has received, (6) any other measures that the claimant employs to relieve the pain, and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain. 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

The ALJ determined that the plaintiff had only "mild restriction" in daily living and that she "reported no significant difficulties with activities of daily living related to psychological or psychiatric issues," but that conclusion does not appear to account for the entirety of the plaintiff's testimony. (Tr. 17.) The ALJ did consider the plaintiff's daily activities, which included trips to see her mother in Clifton Park, New York (Tr. 52), and some socialization with friends, including attending concerts at Jones Beach Band Shell (Tr. 51). The ALJ also noted the plaintiff's testimony that she could "cook, clean, do laundry, shop, and take care of children." (Tr. 17.) The ALJ did not mention other aspects of the plaintiff's testimony: for example, that she could not lift her own grocery bags (Tr. 51), could clean only a few dishes (Tr. 50), had to rest after climbing stairs, (*id.*) and suffered debilitating panic attacks up to three times a week (Tr. 57). Nor did the ALJ explain how she balanced the various credibility factors or specify the extent to which she credited the plaintiff's testimony. *See Kane v. Astrue*, 942 F. Supp. 2d 301, 314 (E.D.N.Y. 2013) (finding legal error when the ALJ did not explicitly refer to or discuss any of the credibility factors). On remand, the ALJ should include a specific credibility determination and identify any inconsistencies between the plaintiff's testimony and the rest of the record.

Accordingly, for the reasons set forth above, I remand for further proceedings consistent with this opinion.

**SO ORDERED.**

s/Ann M. Donnelly

ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
        September 1, 2020

10